IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY and CARGILL MEAT SOLUTIONS CORPORATION,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>GREATER OMAHA PACKING COMPANY, INC.,<br><br>　　　　Defendant. | CASE NO. _____<br><br>**COMPLAINT**<br><br>**(JURY DEMAND)** |

Plaintiffs American Home Assurance Company, a New York corporation, (hereinafter "AHAC") and Cargill Meat Solutions Corporation (hereinafter "CMSC"), for their Complaint against the Defendant, Greater Omaha Packing Company, Inc. ("GOPAC"), states as follows:

### THE PARTIES

1. At all times relevant hereto, AHAC was a corporation formed and existing under the laws of the State of New York, with its principal place of business at 175 Water Street, New York, New York, 10038, and was the liability insurer for CMSC as to various claims against CMSC as are more fully described in paragraphs 15 and 16.

2. At all times relevant hereto, CMSC was a corporation formed and existing under the laws of the State of Delaware, with its principal place of business at 151 North Main, Wichita, Kansas, 67202-1410.

3. At all times relevant hereto, GOPAC was a corporation formed and existing under the laws of the State of Nebraska, with its principal place of business at 3001 L. Street, Omaha, Nebraska, 68107.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper pursuant to 28 U.S.C. § 1391(a).

## COMMON ALLEGATIONS

6. On or about June 2, 2006, GOPAC provided CMSC a "General and Continuing Pure Food/Hold Harmless Guarantee" ("Guarantee"), whereby GOPAC guaranteed, in relevant part, that:

> [A]ll articles comprising each shipment or other delivery [by GOPAC] to [CMSC] as of the date of shipment or delivery will . . . [n]ot be adulterated or misbranded within the definitions provided in the Meat Inspection Act, Federal Food, Drug and Cosmetic Act, or any amendment thereof.

7. The Guarantee also provided that all articles sold by GOPAC to CMSC would "[b]e able to be legally transported or sold."

8. In August 2007, GOPAC manufactured, sold and shipped raw beef trim to CMSC under the Guarantee.

9. CMSC used the raw beef trim sold by GOPAC to process ground beef products for sale to vendors and merchants throughout the United States.

10. On October 6, 2007, the United States Department of Agriculture / Food Safety Inspection Service announced the recall of approximately 845,000 pounds of ground beef products that had been processed by CMSC between August 9 and August 16, 2007 due to the presence *E. coli* O157:H7 ("*E. coli.*").

11. The ground beef products subject to the October 2007 Recall were processed by CMSC using raw beef trim supplied by GOPAC in August 2007.

12. In addition, the strain of *E. coli* that prompted the October 2007 recall originated from raw beef trim supplied by GOPAC to CMSC in August 2007 ("GOPAC Raw Trim").

13. The GOPAC Raw Trim was adulterated and/or misbranded under the Federal Meat Inspection Act, 21 U.S.C. 601 *et seq.*, and could not be legally transported or sold by GOPAC in commerce.

14. Consumers in numerous states alleged they suffered *E. coli*-related bodily injuries and damages ("*E. coli* Illnesses") as a direct and proximate result of consuming ground beef products processed by CMSC using GOPAC Raw Trim.

15. CMSC and/or AHAC settled with numerous individuals (for total amounts exceeding $100,000.00) who alleged bodily injury and damages as a direct and proximate result of consuming ground beef products processed by CMSC using GOPAC Raw Trim.

16. CMSC was also sued in separate actions in the Knox County Circuit Court in Tennessee (*Louis J. Smith, et al. v. Cargill Meat Solutions Corporation, et al.*, Case No. 1-12-08) and the Federal District Court of Minnesota (*Art Hemmingson, et al. v. Cargill Meat Solutions Corp.*, Case No. 0:08-cv-06464), as a direct and proximate result

of processing and selling ground beef products derived from GOPAC Raw Trim. CMSC also faced numerous additional lawsuits.

17. AHAC and CMSC have also incurred substantial attorney fees and expenses (in amounts exceeding $100,000.00) in negotiating settlements of claims, defending lawsuits and conducting extensive discovery.

18. CMSC has also incurred substantial costs and expenses (in amounts exceeding $100,000.00) associated with the recall of ground beef products processed using GOPAC Raw Trim.

19. Thus, as a direct and proximate result of processing and selling ground beef products derived from GOPAC Raw Trim, CMSC has incurred significant damages, including but not limited to, business interruption, recall costs, lost profits (both past and future), loss of goodwill, and costs, expenditures and attorneys' fees related to the settlements and defense of multiple claims.

20. The Guarantee issued by GOPAC to CMSC provides, pursuant to its express terms, that "the Guarantee shall extend to any damages that are a direct and proximate result of any of [GOPAC's] actions."

21. AHAC, as liability insurer for CMSC, made various settlement payments for or on behalf of CMSC, as to the various settled claims (more fully described above) and is, therefore, subrogated to the rights of CMSC, to the extent of such payments.

## COUNT ONE
*(Breach of Express Warranty)*

22. AHAC and CMSC incorporate by referenced paragraphs 1 through 21 of this Complaint as if fully rewritten herein.

23. GOPAC manufactured, sold and shipped GOPAC Raw Trim to CMSC and/or for CMSC use.

24. At the time of the sale, GOPAC was a merchant with respect to the GOPAC Raw Trim sold to CMSC.

25. GOPAC expressly warranted through affirmations of fact, promises and/or descriptions, including, but not limited to, the Guarantee, that the GOPAC Raw Trim would not be adulterated or misbranded, and would be able to be legally transported or sold, and such expressions became part of the basis of the parties' bargain.

26. The GOPAC Raw Trim did not conform to the aforesaid express warranties, constituting a breach of such express warranties.

27. Within a reasonable time after CMSC discovered the breach, CMSC gave GOPAC notice of such breach.

28. GOPAC's breach of its warranties was the direct and proximate cause of the alleged *E. coli* illnesses, the resulting product recall and the subsequent and resulting damages to CMSC.

## COUNT TWO
*(Breach of Implied Warranty of Merchantability)*

29. AHAC and CMSC incorporate by reference paragraphs 1 through 28 of this Complaint as if fully rewritten herein.

30. GOPAC manufactured, sold and shipped GOPAC Raw Trim to CMSC and/or for CMSC use.

31. At the time of the sale, GOPAC was a merchant with respect to the GOPAC Raw Trim sold to CMSC.

32. At the time GOPAC shipped the GOPAC Raw Trim to CMSC, the GOPAC Raw Trim was not merchantable.

33. Within a reasonable time after CMSC discovered the breach, CMSC gave GOPAC notice of such breach.

34. GOPAC's breach of its warranties was the direct and proximate cause of the alleged *E. coli* illnesses, the resulting product recall and the subsequent and resulting damages to CMSC.

## COUNT THREE
*(Breach of Implied Warranty of Fitness for a Particular Purpose)*

35. AHAC and CMSC incorporate by reference paragraphs 1 through 34 of this Complaint as if fully rewritten herein.

36. GOPAC manufactured, sold and shipped GOPAC Raw Trim to CMSC and/or for CMSC use.

37. When the contract for sale was made, CMSC purchased the GOPAC Raw Trim for the particular purpose of grinding and then reselling ground beef products processed with GOPAC Raw Trim for human consumption. GOPAC knew of this particular purpose.

38. When the contract for sale was made, CMSC was relying on GOPAC's skill and judgment to design, manufacture, select, furnish and/or sell GOPAC Raw Trim suitable for that particular purpose. GOPAC had reason to know of this reliance.

39. At the time the GOPAC Raw Trim was delivered by GOPAC to CMSC, the GOPAC Raw Trim was not fit for the particular purpose in question.

40. Within a reasonable time after CMSC discovered the breach, CMSC gave GOPAC notice of such breach.

41. GOPAC's breach of its warranties was the direct and proximate cause of the alleged *E. coli* illnesses, the resulting product recall and the subsequent and resulting damages to CMSC.

## COUNT FOUR
*(Breach of Contract)*

42. AHAC and CMSC incorporate by reference paragraphs 1 through 41 of this Complaint as if fully rewritten herein.

43. On or about June 2, 2006, CMSC entered into the Guarantee with GOPAC which governed the sale of the GOPAC Raw Trim to CMSC.

44. Pursuant to the Guarantee, GOPAC was obligated and had a duty to provide CMSC with GOPAC Raw Trim that was not adulterated or misbranded, and that was able to be legally transported or sold.

45. On or before October 6, 2007, GOPAC breached the aforementioned contractual duties by shipping GOPAC Raw Trim containing *E. coli*, which rendered the

GOPAC Raw Trim adulterated or misbranded within the terms of the Guarantee, and also rendered the GOPAC Raw Trim unable to be legally transported or sold.

46. GOPAC's breach of its Guarantee was the direct and proximate cause of the alleged *E. coli* illnesses, the resulting product recall and the subsequent and resulting damages to CMSC.

## COUNT FIVE
*(Indemnity)*

47. AHAC and CMSC incorporate by reference paragraphs 1 through 46 of this Complaint as if fully rewritten herein.

48. AHAC and CMSC were free of wrongdoing with respect to the damages caused by the adulterated GOPAC Raw Trim, including, but not limited to, numerous *E. coli* illnesses and the recall of ground beef products processed by CMSC using GOPAC Raw Trim.

49. Nevertheless, AHAC and CMSC were compelled to enter into settlement agreements with individuals and their families suffering bodily injury and damages from their exposure to *E. coli*, and have, therefore, incurred a loss and damages in excess of $75,000.00.

50. Such damages were caused solely by GOPAC's active wrongdoing, namely, GOPAC's breach of express warranties, breach of implied warranties, and breach of contract.

51. Justice requires that GOPAC bear the damages incurred by CMSC and AHAC.

52. As such, in the alternative to Counts One through Four, AHAC and CMSC are entitled to indemnification from GOPAC for any and all damages it has incurred.

WHEREFORE, AHAC and CMSC request that the Court enter judgment in favor of AHAC and CMSC in an amount to be determined at trial, but believed to be no less than $100,000.00, and against GOPAC for costs and expenses incurred in the aforementioned recall, lost profits and damage to CMSC's professional reputation, costs, expenditures and attorney's fees for the defense and/or settlement of all claims related to illnesses caused the presence of *E. coli* in GOPAC Raw Trim, and for any such other relief as the by Court deems just and equitable.

## REQUEST FOR JURY TRIAL

AHAC and CMSC hereby request a jury trial in this matter.

## DESIGNATION OF PLACE OF TRIAL

AHAC and CMSC designate Omaha, Nebraska as the place of trial.

Dated this 5th day of August, 2011.

        AMERICAN HOME ASSURANCE
        COMPANY and CARGILL MEAT
        SOLUTIONS CORPORATION, Plaintiffs

By:  s/Thomas A. Grennan
    Thomas A. Grennan, #15675
    Francie C. Riedmann, #20143
    Gross & Welch, P.C., L.L.O.
    1500 Omaha Tower
    2120 South 72nd Street
    Omaha, Nebraska 68124
    Phone: (402) 392-1500
    Facsimile: (402) 392-8101
    tgrennan@grosswelch.com
    friedmann@grosswelch.com

    Ralph A. Weber, *pro hac vice application forthcoming*
    Shawn K. Stevens, *pro hac vice* application forthcoming
    Gass Weber Mullins LLC
    309 North Water Street
    Milwaukee, Wisconsin 53202
    Phone: (414) 223-3300
    Facsimile: 414 224 6116
    weber@gasswebermullins.com
    stevens@gasswebermullins.com