IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

AMERICAN HOME ASSURANCE          )
COMPANY and CARGILL MEAT         )
SOLUTIONS CORPORATION,           )
                                 )
              Plaintiffs,        )          8:11CV270
                                 )
          v.                     )
                                 )
GREATER OMAHA PACKING COMPANY,)          MEMORANDUM AND ORDER
INC.,                            )
                                 )
              Defendant.         )
_____)

This matter is before the Court on (1) the motion of Cargill to relieve it of any obligation to respond to GOPAC's 30(b)(6) Notice (Filing No. 123); (2) the separate motion of Cargill to compel discovery and limit the scope of GOPAC's 30(b)(6) Notice (Filing No. 120); and (3) the motion of GOPAC for an extension of the seven hour limit for depositions (Filing No. 129).

I. Length of 30(b)(6) Depositions

First, Cargill argues that the Amended Progression Order limits the duration of 30(b)(6) depositions to a total of seven hours regardless of the number of representatives.  The relevant language from the Amended Progression Order is as follows:

> Each party is limited to taking
> thirty (30) depositions in this
> case, without leave of court. A
> deposition taken pursuant to
> Fed.R.Civ.P.30(b)(6) counts as a

> single deposition for purposes of
> this limit, regardless of the
> number of topics or representatives
> produced by a party in response to
> a 30(b)(6) deposition notice.

The reference to 30(b)(6) depositions "count[ing] as a single deposition" is only "for the purposes of this limit," i.e. the total number of depositions.  The Amended Progression Order places no specific limits on the duration of depositions except to refer the parties to Rule 30(d)(1).  The text of Rule 30(d)(1) limits the length of a deposition to "1 day of 7 hours."  The Advisory Committee Notes to the 2000 Amendment clearly state that "[f]or purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition."  Based on the arguments made at the September 5, 2013, hearing, the Court expects that seven hours per 30(b)(6) representative will be adequate for purposes of this case.  Therefore, this is the baseline from which the Court will consider any further limitations or expansions of time under Rules 26(b)(2)© (imposing an obligation to limit discovery if it is unreasonably cumulative or unnecessarily burdensome) or 30(d)(1) ("[T]he court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent.").

Next plaintiffs argue that any witnesses designated as representatives for purposes of the 30(b)(6) deposition should not be subject to an additional seven-hour deposition in their

-2-

individual capacity.  Plaintiff recognizes that the Federal Rules suggest a presumption in favor of independent seven-hour depositions.  *Sabre v. First Dominion Capital, LLC*, No. 01-CV-2145, 2001 WL 1590544 (S.D.N.Y. December 12, 2001).  Plaintiffs seek to overcome the presumption.  However, the only basis plaintiffs cite for such a ruling is a vague reference to "an efficient discovery process."  Given the complex nature of the case and the substantial amount in controversy, the Court sees no reason to consolidate the time allowed for depositions given in a representative and individual capacity.

II. Protective Order

GOPAC is entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id*.  However, the Court must limit discovery if it is unreasonably cumulative or unnecessarily burdensome.  *Id*. at 26(b)(2)©.  A motion for a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute. . . .  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  The

-3-

Court finds that the movant has made a good faith effort to confer with the opposing party but that such communications have failed to resolve the dispute. Further, the Court finds that the movant has made a showing of good cause on some of its requests but has failed to make an adequate showing as to others. The movant bearing the burden, the inadequately supported requests will be denied as outlined below.

A. Privileged Information (Topic Nos. 34 & 36)

Cargill objects that Topic Nos. 34 and 36 ostensibly cover communications between Cargill and its attorney Gass Weber that are privileged. The fact that a deposition topic may encompass privileged information is typically insufficient to support an order barring all questions on the topic. *See McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 587 (D. Kan. 2008). In most cases, it is more appropriate for the parties to make their objections when questions implicating privileged information are asked at the deposition. *See United States v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir. 1974) ("[Parties] must normally raise the privilege as to each record sought and each question asked."). However, such orders have been issued where the topic explicitly asks for privileged information. *McBride*, 250 F.R.D at 587. The disputed topics are as follows:

> (34) All contact or communication that "Cargill" (including, but not limited to, Rebecca Hayne and Mark Klein) or "Gass Weber" had with the

-4-

New York Times or Michael Moss
(including, but not limited to,
their agents, employees,
representatives, or reporters)
regarding the "Article" or any
matter contained in the "Article."
(This also includes "Cargill's"
involvement in, and knowledge
regarding, the "Article" and all
contact or communication between
"Cargill" and "Gass Weber"
regarding the "Article" or any
matter contained in the "Article.")

(36) All matters relating to any
arbitrations, lawsuits, litigation,
mediations, settlements (including
the amounts, calculations, and
evaluations related to any
settlements), or any other judicial
proceedings relating to the "Ground
Beef," the "Raw Beef Trim," the
"Recall," any matter alleged in the
"Plaintiffs' Complaint," or any
person who claims to have been
sickened with the alleged E. coli
O157:H7 strain allegedly found in
any part of the "Ground Beef" or
the "Raw Beef Trim."

Neither attorney client privilege nor the work product

doctrine protect all of the information encompassed in Topic No.

34, which requests communications between Cargill and a third

party and communications between Cargill's lawyer and the third

party.  The attorney client privilege protects only those

communications which are confidential.  *See United States v. BDO

Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007).[1]  The work

---

[1] Under Federal Rule of Evidence 501, diversity cases use
federal common law to determine privilege issues, but in non-
diversity civil cases, such as this one, state law applies.  The

product doctrine protects the mental impressions, legal conclusions, and legal strategies of an attorney which are formed in anticipation of litigation on behalf of their client. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Cargill has not argued that the communications with third parties are privileged, and the circumstances suggest that these communications lacked the critical requirements of confidentiality or preparation in anticipation of litigation.[2]  Thus, the Court finds that these communications should not be the subject of a protection order.

The final parenthetical of Topic No. 34 indicates that the request for information regarding the third-party communications includes information about "contact or communications between Cargill and Gass Weber."  To the extent any of the content or existence of these communications were disclosed to a third party, the privilege has been waived for the same reasons noted above.

Topic No. 36 seeks, on its face, information traditionally protected by attorney client privilege or the work product doctrine.  Unlike Topic No. 34 which identifies the non-protected information it seeks from Cargill's attorney, Topic No.

---

Court notes that confidentiality is a common feature to claims of privilege.  *See* Neb. Rev. Stat. § 27-503(2); N.Y. C.P.L.R. § 4503(a)(1).

[2] In an answer to an interrogatory, Cargill explicitly disclaims that Gass Weber was authorized to conduct these conversations on its behalf.

36 makes no attempt to avoid attorney work product and privileged communications regarding settlements with the consumers of tainted beef.  However, the underlying facts upon which the settlement was based are not protected by the work product doctrine.  *Hickman v. Taylor*, 329 U.S. at 508 ("[T]he protective cloak of this privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation.").  Nor is Cargill released of the obligation to disclose such facts simply because they were the subject of attorney-client communications.  *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981).

To the extent that Topic No. 36 seeks strategic information or attorney impressions, conclusions, or opinions such as "calculations and evaluations related to any settlements," the Court finds such information should be protected from inquiry in the 30(b)(6) deposition.  However, if a Cargill representative has knowledge of the underlying facts, regardless of whether such facts were the subject of a privileged communication or committed to writing in attorney work product, they are non-privileged and must be disclosed if inquired upon.

B. Coverage Periods

Cargill objects to examination that extends before or after the year in which the alleged shipment of contaminated beef was delivered and in which the contamination was discovered.

-7-

Though Cargill fails to provide any specific reason to limit discovery to the year 2007, it generally objects that discovery beyond that period is unreasonable, unduly burdensome, irrelevant, and seeks information not likely to lead to the discovery of admissible evidence.  While a general objection does not warrant an order limiting discovery to arbitrary temporal limits, in reviewing the individual topics in dispute, the Court finds reason to impose some restrictions.

Given that the contaminated beef was traced to a specific time in Cargill's facility, the periods substantially before and after the beef was in the facility appear unlikely to produce admissible evidence with regard to most of the disputed topics.  GOPAC fails to address how conditions at the factory in the extended periods might provide relevant information as to the contaminated beef that was in Cargill's facility in the fall of 2007.  Therefore, the period for Topic Nos. 13 and 14 shall be limited to the year 2007.  However, incidence of contamination from other suppliers in a slightly expanded time period may be probative of the contaminated beef's origin.  Therefore the period for Topic Nos. 18, 20, 23, 24, and 39 shall not be altered.  GOPAC has failed to justify the burdensome 11-year period covered by Topic No. 30 for evidence that is only related to the present case by temporal proximity to the processing of

the contaminated beef.  Therefore, the period for Topic No. 30 shall be limited to the year 2007.

C. Over Breadth of Certain Topics

Cargill objects to the breadth of Topic Nos. 18, 23, 30, and 38 as seeking irrelevant information and as overly burdensome.  Cargill also objects to Topic No. 25 on the ground that it asks for detailed information regarding third parties that were not affected by the ground beef from Cargill's facility.  Finally, Cargill objects to Topic Nos. 31 and 32 as failing to provide the specificity required by Rule 30(b)(6) which gives the opposing party notice of the areas of inquiry. The Court will take each topic in turn.

Topic No. 18 seeks discovery regarding *E. coli* sampling or tests.  Cargill objects to the breadth of the request which seeks information from any United States "Cargill" establishment. Because the contamination at issue in the present case was isolated to Cargill Est. No.924A, Cargill argues that testing or sampling at other facilities is irrelevant and, because of Cargill's considerable size, unduly burdensome.  GOPAC contends that more stringent testing at other facilities would be evidence that testing policies at Cargill Est. No.924A were inadequate and therefore may be responsible for the contamination.  This argument fails as a matter of logic:  the fact that Cargill employed more stringent protocols elsewhere would not imply that

-9-

the protocols at Est. No.924A were inadequate.  However, as noted above, other contamination around the same time that is traceable to other suppliers is relevant.  Therefore, Topic No. 18 will be limited to sampling or tests that indicated the possible presence of *E. coli* O157:H7.

Topic No. 23 seeks discovery regarding communications between Cargill and its other suppliers regarding "development, effectiveness, implementation, operation, and the quality" of plans and protocols for preventing contamination from entering the supply chain.  Topic No. 30 seeks discovery regarding the products exchanged between Cargill and its other suppliers whose beef product moved through Cargill Est. No.924A around the same time the contaminated beef was processed.  While the breadth of the request covers vast amounts of business information that is irrelevant to the present litigation, some information could produce evidence that other suppliers may have provided the contaminated beef.  Still, GOPAC's request to depose a representative on "all aspects of 'Cargill's' business relationship with [it's suppliers]" is clearly too broad to provide meaningful notice to Cargill.  While the breadth of these topics cover potentially relevant information, it is the kind of voluminous factual information that is better suited to a request for the production of documents or interrogatories.

-10-

The massive quantity of raw data that Topic No. 23 and Topic No. 30 purport to request is at the very least extraordinarily burdensome considering the more efficient alternatives for obtaining such information.  At most it is requesting impossibly voluminous data from a deponent.  Both topics fail to provide adequately specific notice to Cargill regarding the information to be covered.  However, these topics are not particularly susceptible to judicial narrowing on the facts and arguments provided to the court.  Therefore, if GOPAC intends to pursue these topics, it must narrow their scope to exclude irrelevant information and the kind of voluminous raw data that cannot be reasonably expected of a deponent.

Similarly, Topic Nos. 31 and 32 fail to "describe in reasonable particularity the matters for examination":

> (31) All matters allegedly supporting or providing the basis for any of the allegations in "Plaintiffs' Complaint and "Cargill's" answers and supplemental answers to "Greater Omaha's" First and Second Set of Interrogatories and Request for Production of Documents to Plaintiffs

> (32) The allegations in "Greater Omaha's" Counterclaim against "Cargill" and "Cargill's" alleged affirmative defenses to "Greater Omaha's" Counterclaim.

Rather these topics purport to inquire on the full range of issues involved in the entire litigation.  Therefore, Topic Nos.

-11-

31 and 32 must also be narrowed before the taking of the
deposition.

        Topic No. 38 seeks detailed information regarding the
sale and distribution of Cargill's products:

> "Cargill's" sales history
> (including the name and address of
> the customer, date of sale, date of
> shipment, date of receipt of
> shipment, product code and product
> description of the product sold,
> the quantity and weight of each
> product sold, and the date code,
> serial number, package code, SKU
> number, UPC number, "Best if Used
> by" date, and "Packed / Chilled by"
> date for each product sold), for
> each person or entity to whom any
> United States "Cargill"
> establishment sold or distributed
> any beef product during the period
> of June 1, 2007 through November
> 31, 2007. (This includes, but is
> not limited to, "Cargill's" sale or
> distribution of any beef product to
> Farmland Foods, Inc., Quandt's
> Foodservice Distributors, Inc., The
> Kroger Co., Rochester Meat Company
> (Est. #M8999-P8999), Schnuck
> Supermarkets, Inc., Sysco Newport
> Meat Company, Inc. (Est.
> #M4195-P4195), Toraji Restaurant,
> and any other entity or person in
> the States of Hawaii, Missouri, and
> New York.)

GOPAC contends that such discovery is necessary to "ascertain if
other Cargill establishments . . . shipped meat that was subject
to the October 2007 recall."  If meat subject to the recall came
from a facility that did not include GOPAC beef, the requested
information could indicate that the contaminated beef came from a

-12-

different supplier.  This is of central relevance to basic contentions of Cargill's claims.  However, the information intended for examination is contained in presumably voluminous sales, inventory, and tracking records -- not the knowledge and experience of a representative.  It is impossible that, even after reviewing all the documents, any representative could speak knowledgeably about the specific SKU numbers of a meat product on which GOPAC decides to inquire at the deposition.  Therefore, examination on Topic No. 38 will be limited to the general nature and operation of Cargill's sales, distribution, and tracking processes.

Topic No. 25 requests detailed information "[f]or each person who allegedly contracted *E. coli* O157:H7 from any product involved in the 'Recall.'"  This includes a number of individuals who did not contract *E. coli* from a Cargill product or enter into a settlement with Cargill.  Though potentially relevant, the Federal Rules insist that burdensome production be avoided where other less burdensome sources for the information are available. Fed. R. Civ. P. 26(b)(2)©.  Here, it appears that detailed information about third parties would be more conveniently -- and more accurately -- provided by the third parties themselves. GOPAC has not provided the Court any arguments as to why a 30(b)(6) deposition of Cargill is a reasonably efficient and not

unreasonably burdensome avenue for obtaining the requested
information.

III. Motion to Compel

    A. Electronically Stored Information

        Cargill seeks an order from the Court compelling the
production of e-mails and other electronically stored information
that have allegedly been withheld.  However, Cargill has failed
to identify a specific e-mail or electronic record that GOPAC is
refusing to produce.  Rather, Cargill argues that the small
number of e-mails produced (25) evidences a lack of diligence in
production.  GOPAC has an obligation to promptly produce
information resulting from timely searches of all digital records
over which it has possession or control.  However, the Court
cannot compel the production of information that does not exist.
GOPAC argued before the Court that prior to 2011, it had no
central server on which e-mails were stored.  GOPAC has further
assured the Court that it has turned over all ESI that its
searches produced and continues to supplement as it finds
additional information.  GOPAC has also offered to search
available sources using search terms provided by Cargill, but
Cargill has refused to supply any additional terms.

        Discovery on this matter has been ongoing since July of
2012.  It is unclear to the Court why ESI that has presumably
been in GOPAC's possession since the start of discovery has not

-14-

been fully produced.  To provide Cargill an adequate opportunity
to contest discovery of ESI, the Court will order GOPAC to
disclose the sources it has searched or intends to search and,
for each source, the search terms used.  The Court will also
order all ESI based on the current search terms be produced by
November 1, 2013.  However, given Cargill's failure to point to
any specific information that has been withheld or additional
sources that have not been searched, no further action by the
Court is appropriate at this time.

B. Supplements to Interrogatories and Document Production
Requests

        Cargill seeks an order compelling GOPAC to answer
Interrogatories 22-28, 30, and 35-38.  Cargill filed its first
set of interrogatories in October of 2012 and a second set of
interrogatories in February of 2013.  GOPAC's initial response to
all of these interrogatories consisted almost entirely of a
promise to supplement its response as discovery continued.  At
the time this motion was filed, nine months after the first
filing and six months after the second filing, GOPAC had not
completed its responses.  GOPAC must file a response or state
that it does not have knowledge sufficient to answer these
interrogatories.  While the amended discovery deadline is not
until February 3, 2014, discovery is a recursive process which
benefits from prompt responses to early requests.  GOPAC has had

-15-

ample time to gather the responsive information and form an answer.  Likewise, GOPAC has agreed to supplement Document Production Request Nos. 10, 36-38, 42, 49, and 50, implying that it has no objections to these Requests.  Yet, the requests have been pending since at least February of 2013.  Therefore, the Court will order that GOPAC answer the interrogatories and produce documents responsive to the non-controversial Document Production Requests by November 1, 2013.

GOPAC has objected to Request No. 22 on the grounds that the request is overly broad and requests information protected by the attorney client privilege and/or the work product doctrine.  GOPAC has objected to Request No. 24 on similar grounds, arguing that the only relevant sampling and procedures at GOPAC's plants are those surrounding the allegedly contaminated beef.  This is incorrect.  GOPAC's counterclaim alleges loss of business and other damages due to actions by Cargill.  Information regarding the procedures and sampling for the time frame requested could be used to dispute the cause or the existence of the claimed damages.  GOPAC's objections are overruled, except as regarding privilege or work product protection.

GOPAC has objected to handing over confidential tax documents in response to Request No. 30.  The Court appreciates the confidentiality of these records, but GOPAC has not provided

-16-

any reason why Cargill's suggestion that the tax documents be labeled "CONFIDENTIAL - ATTORNEY'S EYES ONLY" is insufficient to protect confidentiality.  The Court will order that GOPAC turn over the responsive tax documents with the appropriate label affixed.  For these purposes ATTORNEY'S EYES ONLY refers only to Cargill's outside counsel.  At the close of the litigation, Cargill must return or destroy all copies.

GOPAC has also objected to Request Nos. 51-54 on the ground that the are over-broad, unreasonably burdensome, and unlikely to produce relevant information.  The Court agrees that, as written, the requests cover a massive breadth of documents, only some of which are both relevant and non-privileged.  A motion to compel on these requests is inappropriate. Accordingly,

IT IS ORDERED:

1) The 1-day, 7-hour period designated by the Federal Rules shall apply separately to each representative designated for 30(b)(6) deposition.

2) The appearance of a witness as a 30(b)(6) designee shall not affect either party's right to take a deposition of that witness in their individual capacity for the full duration contemplated by the Federal Rules.

3) Cargill's request for an order compelling Cargill to limit the number of topics in its 30(b)(6) deposition notice is denied.

4) Cargill's request for a protective order is denied with respect to the content of Deposition Topic No. (34). Cargill is free to make objections at the deposition to protect confidential attorney-client communications and work product, but Cargill must disclose any communications or work product that was previously disclosed to a third party.

5) Inquiry under Topic Nos. 13, 14, and 30 shall be limited to the year 2007.

6) Cargill's request for more restrictive temporal limits on Topic Nos. 18, 20, 23, 24, and 39 is denied.

7) Cargill's representatives shall not be required to disclose attorney impressions, conclusions, or opinions regarding settlements with consumers of tainted beef at the 30(b)(6) deposition.

8) Cargill shall be required to disclose any underlying facts regarding consumers of tainted beef, the tainted beef which the consumers received, and other facts related to the incidents of tainted beef which resulted in settlements by Cargill.  Such facts are discoverable regardless of whether Cargill has first hand knowledge of the fact in its documents or through its

employees or whether such facts were gleaned from third parties as part of the investigations which led to the settlements.

9) Inquiry under Topic No. 18 shall be limited to sampling or testing that indicated the presence of *E. coli* O157:H7 but shall not be limited to a single Cargill facility.

10) On or before September 23, 2013, GOPAC shall serve a revised Notice to Take Rule 30(b)(6) deposition that contains revisions to Topic Nos. 23, 30, 31 and 32 that appropriately narrow their scope.  Alternatively, GOPAC may choose to withdraw these topics.

11) Inquiry under Topic No. 38 shall be limited to the general nature and operation of Cargill's sales, distribution, and tracking processes.

12) Inquiry under Topic No. 25 shall be limited to individuals alleged to have contracted *E. coli* O157:H7 from a Cargill product or which have settled with Cargill in relation to 'the Recall.'

13) No later than September 30, 2013, GOPAC shall disclose to Cargill the sources it has searched or intends to search for ESI and, for each source, shall identify the search terms used.

14) No later than November 1, 2013, GOPAC shall produce ESI for all sources within its possession or control based on the search parameters that it has already established.

-19-

15) No later than November 1, 2013, GOPAC shall provide its supplemental answers to Interrogatories Nos. 22-28, 30, and 35-38.

16) No later than November 1, 2013, GOPAC shall produce its supplemental responses to Cargill's Document Production Requests Nos. 10, 36-38, 42, 49, and 50.

17) No later than November 1, 2013, GOPAC shall produce all non-privileged materials responsive to Cargill's Document Production Request Nos. 22 and 24.

18) No later than November 1, 2013, GOPAC shall produce a copy of responsive tax documents.  Such documents shall be labeled "CONFIDENTIAL - ATTORNEY'S EYES ONLY."  Cargill's outside counsel, upon receiving any documents labeled "CONFIDENTIAL - ATTORNEY'S EYES ONLY," will take steps to ensure that such documents are not viewed by anyone other than Cargill's outside counsel in this matter.  Within 60 days of the close of litigation, Cargill shall hand over any copies of these documents to GOPAC or destroy them.  A file copy shall not be retained. Within 10 days of destruction or return, Cargill shall certify to GOPAC's counsel that all copies have been returned or destroyed.

19) Cargill's request for an order compelling production responsive to its Document Production Request Nos. 51-54 is denied.

DATED this 11th day of September, 2013.

BY THE COURT:

/s/ Lyle E. Strom

LYLE E. STROM, Senior Judge
United States District Court