IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AMERICAN HOME ASSURANCE COMPANY and CARGILL MEAT SOLUTIONS CORPORATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | 8:11CV270 |
| v. | ) ) | |
| GREATER OMAHA PACKING COMPANY, INC., | ) ) ) | MEMORANDUM OPINION |
| Defendant. | ) ) | |

This matter is before the Court on plaintiff Cargill Meat Solutions Corporation's motion for summary judgement (Filing No. 219) on the defendant's counterclaim. Plaintiff Cargill has filed a brief (Filing No. 220) and index of evidence (Filing No. 221) in support of its motion. The defendant filed a brief (Filing No. 363) and indices of evidence (Filing Nos. 364, 365, 366, 367, 368, 369) in opposition of the motion. The plaintiff filed a reply brief (Filing No. 396) and index of evidence (Filing No. 397). The plaintiff's motion will be granted.

I. **BACKGROUND**

An *E. coli* outbreak occurred in 2007 which gravely injured several people. An investigation traced the *E. coli* back to a ground beef patty manufacturer, Cargill Meat Solutions, Corp. ("Cargill"), who is the plaintiff in this case along with

American Home Assurance Company ("Assurance").  The plaintiffs have brought various contract claims against the defendant, Greater Omaha Packing, Co. ("GOPAC").  Essentially, the plaintiffs claim that GOPAC sold Cargill meat contaminated with the *E. coli* strain in violation of a contract between GOPAC and Cargill.  GOPAC denies all claims and asserts a counterclaim against the plaintiffs for the tortious interference with business relationships and expectancies (hereinafter "Tortious Interference").  Filing No. 40, at 8.

The impetus for GOPAC's counterclaim is an article in which an attorney retained by Cargill allegedly commented on aspects of this case, before it was filed, to a reporter.  Cargill had retained Shawn Stevens, attorney at Gass, Weber & Mullins, to defend Cargill from claims brought by those injured by the *E. coli* outbreak (Filing No. 220, at ¶22).  In the course of Mr. Stevens's work with Cargill, Mr. Stevens discovered facts which led Cargill to assert claims against GOPAC and file this current claim against it.  In late March 2009, *New York Times* reporter, Michael Moss, first spoke to Mr. Stevens on the phone.  The two men spoke five times in total.  According to Mr. Stevens, the conversations were initially innocuous and generalized regarding how one performs traceback investigations in *E. coli* outbreaks; however, Mr. Moss garnered additional facts underlying

the 2007 Cargill recall and began to ask Mr. Stevens more pointed questions. At that point, Mr. Stevens refused to answer additional questions and ended the conversations.

On October 3, 2009, Mr. Moss published a ten-page, Pulitzer-prize winning story regarding the *E. coli* outbreak, "The Burger That Shattered Her Life" (Filing No. 210-1, at 1-10). In salient part, the *New York Times* article (hereinafter "the Article") read as follows:

> Shawn K. Stevens, a lawyer in Milwaukee working for Cargill, began investigating. Sifting through state health department records from around the nation, Mr. Stevens found the case of a young girl in Hawaii stricken with the same E. coli found in the Cargill patties. But instead of a Cargill burger, she had eaten raw minced beef at a Japanese restaurant that Mr. Stevens said he traced through a distributor to Greater Omaha.
>
> "Potentially, it could let Cargill shift all the responsibility," Mr. Stevens said. In March, he sent his findings to William Marler, a lawyer in Seattle who specializes in food-borne disease cases and is handling the claims against Cargill.
>
> "Most of the time, in these outbreaks, it's not unusual when I point the finger at somebody they try to point the finger at somebody else," Mr. Marler said. But he said Mr. Stevens's finding "doesn't

-3-

> rise to the level of proof that I need" to sue Greater Omaha.
>
> It is unclear whether Cargill presented the Hawaii findings to Greater Omaha, since neither company would comment on the matter.

Filing No. 210-1, at 9. It is important to note that GOPAC's claims do not focus on whether the Article itself was the cause of damages. Rather, GOPAC asserts the statements Mr. Stevens made to Mr. Moss were disseminated to GOPAC's clientele during Mr. Moss's investigation of the Article and thereby caused damages (*See* Filing No. 40, at ¶17-21).

In order to determine whether GOPAC experienced damages related to the Article or the statements Mr. Stevens made to Mr. Moss, GOPAC commissioned an event study. The event study concluded that, prior to the publication of the Article and through the end of the calender year, GOPAC's price for boxed-beef was less than that of the national price for boxed beef. GOPAC's study attributes this variance to its customers' knowledge of Mr. Stevens's statements or the imminent release of the Article. Cargill moves the Court to grant summary judgement against GOPAC's Tortious Interference claim. The issue in this matter is whether, in the light most favorable to GOPAC, could

-4-

lead a reasonable juror to find for GOPAC's Tortious Interference claim.

## II. STANDARD OF REVIEW

Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. § 56(c). Although, on a motion for summary judgment, the Court must view all evidence in the light most favorable to the non-moving party, the nonmoving party must show there is more than some metaphysical doubt as to the material facts, and must produce specific facts showing a genuine issue exists for trial. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quotations and citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (citations and quotation omitted). The Court only considers admissible evidence offered by the parties to defeat summary judgment. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011).

**III. TORTIOUS INTERFERENCE**

In this case, Nebraska law controls the analysis of Tortious Interference. Tortious Interference is essentially when "the defendant intentionally disrupted a commercial relationship between the plaintiff and a *third party*." *Bucktail I Ranch v. Farm Credit Bank of Omaha, Corp.*, No. A-91-286, 1993 WL 70942, at *3 (Neb. Ct. App. 1993) (citations omitted). Under Nebraska law, the elements of Tortious Interference require a claimant to prove all the following:

> (1) the existence of a valid business relationship or expectancy,
>
> (2) knowledge by the interferer of the relationship or expectancy,
>
> (3) an unjustified intentional act of interference on the part of the interferer,
>
> (4) proof that the interference caused the harm sustained, and
>
> (5) damage to the party whose relationship or expectancy was disrupted.

*The Lumar Co. v. City of Fremont*, 278 Neb. 485, 497, 771 N.W.2d 894, 906 (2009) (citing *Aon Consulting v. Midlands Fin. Benefits*, 275 Neb. 642, 748 N.W.2d 626 (2008)). In addition, "[o]ne of the basic elements of tortious interference with a business relationship requires an intentional act which induces or causes

a breach or termination of the relationship." *Wiekhorst Bros. Excavating & Equip. Co. v. Ludewig*, 247 Neb. 547, 557, 529 N.W.2d 33, 40 (1995) (citing *Renner v. Wurdeman,* 231 Neb. 8, 434 N.W.2d 536 (1989); *Miller Chemical Co., Inc. v. Tams*, 211 Neb. 837, 320 N.W.2d 759 (1982). Viewing the facts in a light most favorable to GOPAC, GOPAC has not established sufficient evidence to support a finding for its Tortious Interference claim.

One of the basic elements of tortious interference with a business relationship requires an intentional interference inducing or causing a breach or termination of the relationship or expectancy. *Delay First Nat. Bank & Trust Co. v. Jacobson Appliance Co.,* 196 Neb. 398, 410-11, 243 N.W.2d 745, 752 (1976). GOPAC offered no admissible evidence that Cargill or Mr. Stevens intentionally interfered.

Cargill itself did not contribute to the Article or to the statements of Mr. Stevens. GOPAC, however, alleges a string of privileged documents demonstrates Cargill's strategy to blame GOPAC for the outbreak. Filing No. 363, at 65-69. The Court examined *in camera*[1] those documents and determined that the documents were privileged and do not stand for the proposition GOPAC implies. No fact in the record supports GOPAC's claim

---

[1] *See* Filing No. 332.

Cargill affirmatively acted to interfere with GOPAC's business relations.

GOPAC claims Mr. Stevens was an agent of Cargill when he made the statements to Mr. Moss, and, therefore, his statements are imputed to Cargill. Filing No. 363, at 69-72. Furthermore, GOPAC claims that Mr. Stevens spoke on behalf of Cargill and had consent to release information to Mr. Moss. Filing No. 363, at 46, ¶52-¶54. However, the statements within the Article and the e-mails from Mr. Moss to Cargill are hearsay insofar as GOPAC cannot use those documents at trial to prove the matters asserted therein. First, GOPAC lacks any evidence that Cargill expressly authorized Mr. Stevens to speak to Mr. Moss. Second, GOPAC lacks any evidence that Cargill impliedly authorized Mr. Stevens to speak to Mr. Moss. To the contrary, evidence exists which undermines the subjective element of this inquiry. Filing Nos. 221-14, at 23-24 (stating Mr. Stevens's belief that he lacked authorization to release information regarding his alleged statements to Mr. Moss). There is no evidence shows Mr. Stevens had actual authority to communicate with Mr. Moss regarding their alleged communication. Finally, there is no evidence to establish Mr. Stevens had apparent authority. Therefore, Mr. Steven's alleged intent cannot be imputed to Cargill.

Also, Cargill lacked intent. As stated before, Mr. Stevens intent is not imputable to Cargill. However, no admissible evidence exists that Mr. Stevens or Cargill wished to communicate to Mr. Moss in an attempt that was substantially certain to reduce GOPAC's sales prices. In a light most favorable to GOPAC, no evidence exists to prove direction or intent to leak information to the press that was damaging to GOPAC.

Finally, no admissible evidence exists that Mr. Stevens made the comments to Mr. Moss that the Article attributes to him. The evidence which GOPAC wishes to use to attribute those comments contradict Mr. Stevens testimony and are hearsay statements. Filing No. 363, at 46-51. These hearsay statements and bare accusations are insufficient to lead a reasonable jury to find for GOPAC's Tortious Interference claim. A separate order will be entered in accordance with this memorandum opinion.

DATED this 4th day of April, 2014.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court