IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

```
AMERICAN HOME ASSURANCE      )
COMPANY and CARGILL MEAT     )
SOLUTIONS CORPORATION,       )
                             )
           Plaintiffs,       )         8:11CV270
                             )
     v.                      )
                             )
GREATER OMAHA PACKING COMPANY,)        MEMORANDUM AND ORDER
INC.,                        )
                             )
           Defendant.        )
_____)
```

This matter is before the Court on four of plaintiff Cargill's motions in limine. Cargill has filed motions, briefs, and indices of evidence to exclude the expert testimony of Dr. Allen (Filing Nos. 238, 239, 240), Dr. Olson (Filing Nos. 244, 245, 246), Dr. Benson (Filing Nos. 256, 257, 258), and Dr. Schaffner (Filing Nos. 268, 269, 270). The defendant has filed briefs and indices of evidence in opposition to the motions. The plaintiff has filed a reply brief (Filing No. 359) and index of evidence (Filing No. 360). After review of the motion, briefs, and indices of evidence, the Court will deny the motions in part, grant the motions in part, and defer judgement until trial in part.

**I.   BACKGROUND**

An *E. coli* outbreak occurred in 2007 and gravely injured several people.  An investigation traced the *E. coli* back to a ground beef patty manufacturer, Cargill Meat Solutions Corporation ("Cargill"), who is the plaintiff in this case along with American Home Assurance Company ("Assurance").  The plaintiffs have brought various contract claims against the defendant, Greater Omaha Packing Company ("GOPAC").  Essentially, the plaintiffs claim that GOPAC sold Cargill meat contaminated with the *E. coli* strain in violation of a contract between GOPAC and Cargill.

Cargill used four sources of beef to produce the ground beef patties in question.  Those sources were Lone Star Beef Processors, L.P. ("Lone Star"), Beef Products, Inc. ("BPI"), Frigorifico PUL ("Frigorifico"),[1] and GOPAC.  After production, Cargill distributed the patties across the United States.  In the Fall of 2007, multiple people became ill due to *E. coli* O157:H7 (Filing Nos. 328, at 1; 278, at 3).  The Center for Disease Control ("CDC") began to track the illness.  The CDC compiled a "Line List" which comprised 54 people affected by the *E. coli* outbreak.  After identifying the 54 people affected by the *E.*

---

[1] Frigorifico is a Uruguayan company (Filing No. 278, at 3).

-2-

*coli* strain, the CDC found that 27 of them reported exposure to Cargill's burgers (Filing No. 278, at 4). Cargill recalled approximately 845,000 pounds of product and has settled numerous claims against it with those injured by the contaminated meat.

As a result, Cargill undertook an epidemiological traceback investigation of the remaining 27 persons who did not come into contact with Cargill's meat so that Cargill might isolate which of the four producers may have provided contaminated meat. According to the parties, there are two aspects of an epidemiological investigation involving the traceback to the source of a food borne illness outbreak: (1) the "genetics of the organisms that are causing the disease" and (2) applied epidemiology, which focuses on determining the potential source of the pathogen (Filing No. 328, at 4). Once a genetic link is observed, the investigators determine whether there is a common source and then to determine the common source. This is done by reviewing whether the persons expressing the same pathogen and sickness share a common source. The object of an epidemiological investigation is to determine exposure to a common source.

GOPAC has retained the experts to testify and offer opinions at trial regarding Cargill's study and conclusions.

## II. STANDARD OF REVIEW

The Court must determine whether the experts' specialized knowledge will assist the trier of fact to understand evidence or to determine a fact in issue. Fed. R. Evid. 702. Under Rule 702, the Court must consider whether (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In determining the reliability of a scientist's methodology, the Court should consider whether a theory or technique can be and has been tested, whether it has been subject to peer review or publication, whether it has known or potential error rates or standards and controls, and whether it has gained general acceptance in the scientific community. *Marmo v. IBP, Inc.*, 360 F. Supp. 2d 1019, 1021 (D. Neb. 2005) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). The Advisory Committee Notes to the 2000 Amendments to Rule 702, made in response to the *Daubert* decision, list other factors courts often consider when determining whether expert testimony is sufficiently reliable to be considered by the trier of fact. Among these are (1) whether the research was conducted

independently of the litigation or the opinions were developed expressly for purposes of the litigation, (2) whether the expert has extrapolated from an accepted practice to an unfounded conclusion, leaving an analytical gap, (3) whether the expert has adequately accounted for alternative explanations, at a minimum ruling out the most obvious alternative causes, (4) whether the expert has employed the same level of care and intellectual rigor in reaching the opinion as the expert would employ when working outside the courtroom in the expert's field of expertise, and (5) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert is offering.  *Id.*

The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence.  *Daubert*, 509 U.S. at 592-93, n.10.  "[T]estimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case."  *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006).  "When the analytical gap between the data and proffered opinion is too great, the opinion must be excluded."  *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## III. DISCUSSION

A.  Dr. Allen

The first expert witness is Dr. Dell Allen, a purported expert in the meat industry. According to the expert disclosures, Dr. Allen will deliver the following, paraphrased, expert opinions:

> 1. In 2007, GOPAC's *E. coli* O157:H7 sampling protocols complied with the N=60 methodology which was the standard in the meat industry.
>
> 2. Notices of Intended Enforcement and Non-compliance Records that GOPAC received in 2007 do not establish that GOPAC boxed contaminated meat, shipped contaminated meat, or improperly sampled product for *E. coli* O157:H7 in July or August 2007
>
> 3. Due to the number of *E. coli* O157:H7 tests that GOPAC's microbiology testing contractor conducted on GOPAC's product and its facilities on August 9, 2007, it is unlikely that GOPAC fabricated any product that day with high levels of contamination.
>
> 4. There is no evidence that the beef trim fabricated by GOPAC on August 9, 2007, and shipped to Cargill was contaminated with *E. coli* O157:H7.
>
> 5. GOPAC's *E. coli* O157:H7 certificate of analysis for the beef trim product that it shipped

>to Cargill Butler under PO #26186 was valid.
>
>6. It is unlikely that the *E. coli* O157:H7 bacteria that apparently contaminated Cargill's grinding process on August 16, 2007, was spread by cross-contamination.
>
>7. Cargill failed to perform daily finished product testing on its grinding lines, including on the lines on which the ground beef products manufactured on August 16, 2007, which contributed to Cargill's alleged losses and damages.
>
>8. Frigorifico's sampling for *E. coli* O157:H7, like most exporters, did not meet the N=60 standard and violated Cargill's *E. coli* O157:H7 sampling requirements for raw material suppliers. Cargill's use of Frigorifico product without having a valid *E. coli* O157:H7 certificate when it ground the American Chef's Selection burgers on August 16, 2007, did not meet the standard of care, violated Cargill Butler's Hazard Analysis and Critical Control Points ("HACCP") Plan, and the fact that Frigorifico was not using a robust sampling program does not exclude it as a potential source of the *E. coli* O157:H7 contamination that prompted Cargill's ground beef recall.

Filing No. 335, at 1-2.

Cargill moves to exclude Dr. Allen's testimony on numerous grounds. First, Cargill wishes to exclude Dr. Allen's

-7-

opinions regarding the sufficiency of *E. coli* sampling at GOPAC and Cargill. Cargill incorrectly moves to exclude Dr. Allen because his opinion is based upon purported hearsay evidence. Experts may rely upon inadmissable hearsay evidence if that sort of evidence is the kind of fact or data an expert in their field would rely upon in forming an opinion. *See* Fed. R. Evid. 703; *Sosna v. Binnington*, 321 F.3d 742, 746 (8th Cir. 2003) (citing *Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir. 1997)). Dr. Allen visited its facility in order to evaluate GOPAC's procedures and Dr. Allen worked at Cargill for a number of years and is familiar with the meat industry's process. Therefore, Dr. Allen's opinion is not speculative regarding GOPAC's and Cargill's sampling procedures.

Second, Cargill moves to exclude Dr. Allen's testimony against Frigorifico's sampling for *E. coli* O157:H7. Cargill claims Dr. Allen is not an expert on Uruguayan production and therefore his testimony is dubious. Dr. Allen once did a "project on beef carcass grading" in Brazil. Filing No. 251-1, at 3. Dr. Allen has not performed any research into the prevalence of *E. coli* O157:H7 in Uruguay. Indeed, Dr. Allen's testimony, as it is disclosed in his report, appears to be derived from a broad assertion that, because Frigorifico is a foreign company, its sampling measures could not be used to rule

-8-

it out as the source of the *E. coli*. If *E. coli* sampling is relevant as a means to determine where bacteria originated, it does not necessarily follow that a foreign sampling method is irrelevant to that discussion. However, GOPAC claims Dr. Allen relied upon documents supplied to him by GOPAC and Cargill which detail Frigorifico's practices.[2] The Court, at this time, will defer judgment of admissibility of Dr. Allen's assertions regarding Frigorifico until trial.

Third, Cargill objects to Dr. Allen's testimony regarding "finished-product testing," meaning the examination of the beef patties after manufacture. Cargill complains that Dr. Allen ceased working for Cargill in 2004, and is therefore unable to speculate as to the testing practices of the industry in 2007. Again, the nature of Dr. Allen's testimony need not be limited to his personal experiences. Because Dr. Allen relies upon testimony of the senior leadership of Cargill in addition to his personal knowledge, education, and skill, he may offer his testimony at trial.

---

[2] The Court notes that GOPAC's index of evidence, Filing No. 336, does not contain the materials which GOPAC claims it contains. E.g., Filing No. 335 at page 10 cites to "Allen Deposition at 326:20-327:23;" however, no such corresponding material exists in the index. *See* Filing No. 336-1, at 21-23.

B.   Dr. Olson

The second expert witness in these motions is Dr. Dennis Olson, a purported expert in irradiated meat. According to the expert disclosures, Dr. Olson will deliver the following, paraphrased, expert opinions:

> 1. Irradiation effectively eliminates *E. coli* O157:H7 from ground beef products, and Cargill's failure to irradiate its ground beef patties was a contributing cause to the losses claimed by Cargill. Had Cargill irradiated those ground beef patties, *E. coli* O157:H7 existing within those ground beef patties would have been destroyed, and the losses would not have resulted.
>
> 2. Irradiation could have been performed inexpensively and would not affect the quality of the product.
>
> 3. Cargill's failure to perform finished product testing for *E. coli* O157:H7 on the ground beef patties violated the standard of care, and was also a contributing cause to the losses claimed by Cargill in this action.
>
> 4. There are limitations on the effectiveness of the lethality treatment used by BPI with respect to its finely textured beef. Irradiation is a more effective means of ensuring the elimination of *E. coli* O157:H7 from ground beef products.

Filing No. 337, at 1.

First, Cargill claims Dr. Olson is not qualified to opine on "finished-product testing," the process of examining the beef patties after manufacture. Cargill states Dr. Olson lacks experience in microbiological testing, failed to research microbiological testing, lacks expertise in microbiological testing, does not discern the value of one microbiological test over any other test, and lacks sufficient knowledge to construct a standard of care in 2007.

GOPAC lists Dr. Olson's numerous experiences in the beef-irradiating field. It is clear that, to the extent beef-irradiating practices enter into this case, Dr. Olson is well-suited to offer his testimony. In addition, GOPAC states Dr. Olson is knowledgeable regarding industry standards and the standard of care for post-product testing. In forming his opinion, Dr. Olson relies upon twelve years of experience, the testimony of Cargill's most senior leadership, and the practices of beef producers in 2007, including Cargill.

Second, Cargill claims Dr. Olson's opinions regarding irradiation are irrelevant and unduly prejudicial. Specifically, Cargill states that irradiated beef products are distinct from other beef products, like the ground beef patties in this case; therefore, Dr. Olson's opinions should be excluded. The Court

will not rule on the exclusion of Dr. Olson's testimony on this basis at this time.

C.   Dr. Benson

GOPAC hired Dr. Andrew Benson to rebut Cargill's findings from its investigation. Dr. Benson will offer the following, paraphrased, expert opinions at trial:

> 1. The Hawaii case does not establish to a reasonable degree of scientific certainty that GOPAC's product caused Cargill's recall or that the patient contracted *E. coli* O157:H7 from consuming or being exposed to any GOPAC product.
>
> 2. The Missouri case does not establish to a reasonable degree of scientific certainty that GOPAC's product caused Cargill's recall or that the patient contracted *E. coli* O157:H7 from consuming or being exposed to any GOPAC product.
>
> 3. The New York case does not establish to a reasonable degree of scientific certainty that GOPAC's product caused Cargill's recall or that the patient contracted *E. coli* O157:H7 from consuming or being exposed to any GOPAC product.
>
> 4. Collectively, the cases from Hawaii, New York, and Missouri fail to establish to a reasonable degree of scientific certainty that GOPAC's product caused the recall.
>
> 5. There is no evidence that GOPAC's raw beef trim was the cause

>of the adulterated meat patties that Cargill recalled.
>
>6. Cargill's statements to the *New York Times* implicating Greater Omaha as the alleged cause of the October 2007 recall are highly biased, scientifically unsupported, false, misleading, and unjustified.

Filing No. 342, at 1-2.

The parties agree that "traceback studies," or epidemiological investigations, have two parts: (1) the genetic or microbiological aspect of an outbreak and (2) investigative epidemiology, which focuses on the potential source of the pathogens. Filing No. 257, at 3. Cargill does not dispute that Dr. Benson qualifies under the first aspect of this field. Cargill instead states that, because Dr. Benson did not work with a field or investigative epidemiologist, then he cannot qualify under the second aspect of epidemiology because he did not personally investigate the outbreak. *Id.* at 5.

Dr. Benson works and teaches in the epidemiological field. He reviewed numerous pages of epidemiological information compiled from several state field investigations and the CDC. The Court finds that Dr. Benson's specialized knowledge will assist the jury at trial regarding the epidemiological study.

However, Dr. Benson's opinion regarding GOPAC's counterclaim is moot in light of the dismissal of that claim, so the Court will exclude Dr. Benson's sixth topic of testimony.

D.   Dr. Schaffner

Dr. Donald Schaffner is the final expert in this series of motions.  GOPAC retained Dr. Schaffner to rebut Cargill's findings in its investigation.  Dr. Schaffner will offer the following, paraphrased, expert opinions at trial:

> 1. Cargill's Hazard Analysis and Critical Control Points Plan in August 2007 lacked the ability to prevent the entrance of *E. coli* into Cargill's grinding operations.
>
> 2. Cargill had significant pre-operational sanitation deficiencies during the period of August 1, 2007, through August 16, 2007.  The daily deficiencies show that Cargill did not have control over its sanitation process and procedure.
>
> 3. Cargill's failure to perform finished product testing for *E. coli* was an act and/or an omission that was a contributing cause of Cargill's alleged losses and damages.
>
> 4. Frigorifico's *E. coli* sampling methodology was not robust, failed to comply with the N=60 standard, and does not provide a reasonable confidence level that its product was negative for *E. coli*.

> 5. Cargill's failure to audit and perform verification testing on the deficient *E. coli* sampling methodology that Frigorifico used was unreasonable and violated the standard of care.
>
> 6. The Non-compliance Records and Notices of Intended Enforcement that GOPAC received in 2007 do not establish that GOPAC delivered beef product to Cargill that was adulterated or contaminated with *E. coli* O157:H7.
>
> 7. In 2007, GOPAC was using the N=60 sampling methodology, which was, and continues to be, the standard of care in the meat industry for *E. coli* O157:H7 sampling.
>
> 8. There is no evidence that GOPAC intentionally altered, avoided, or subverted its sampling practices to reduce the chance of detecting *E. coli* in its beef products.
>
> 9. GOPAC's *E. coli* certificate of analysis for the beef trim product that it shipped to Cargill is valid.
>
> 10. GOPAC's sanitation was not out of control.

Filing No. 350, at 1-2.

First, Cargill argues that Dr. Schaffner is not qualified to offer opinions regarding beef testing. According to Cargill, Dr. Schaffner lacks experience in the beef industry or in beef microbiological sampling procedures. In other words, Dr.

-15-

Schaffner is an expert in sampling procedures but not in sampling procedures specifically for beef. Cargill cites federal case law which states "[e]xpertise in the technology of fruit is not sufficient when analyzing the science of apples." Filing No. 269, at 7-8 (citing *Diviero v. Uniroyal Goodrich Tire Co.*, 919 F. Supp. 1353, 1357-58 (D. Ariz. 1996). However, Dr. Schaffner's expertise and testimony is not a comparison of apples and oranges. Dr. Schaffner teaches statistical sampling, N=60, and HACCP protocols. He has also authored materials relating to sampling beef products. Dr. Schaffner reviewed documents and testimony to formulate his opinions in this case. The Court finds that Dr. Schaffner is qualified to offer his anticipated testimony.

Second, Cargill argues that Dr. Schaffner's standard-of-care testimony is speculative. Filing No. 350, at 9. GOPAC lists Dr. Schaffner's numerous experiences in the sampling community. His opinions are based upon those experiences and on the documents and statements of the parties in this case. The Court finds that Dr. Schaffner's standard-of-care testimony is not speculative.

E.  Other Objections

Finally, the Court agrees with GOPAC regarding all remaining 402, 403, and 407 objections.  The Court will defer analysis of these topics to another time.

**IV. CONCLUSION**

The Court finds that the experts in these motions base their testimony on sufficient facts or data, the testimony is the product of reliable principles and methods, and the witnesses have applied the principles and methods reliably to the facts of the case.  Furthermore, although this testimony was developed in anticipation of trial, the experts have reached reasonable conclusions which will aid the trier in fact in understanding this case.

IT IS ORDERED:

1) The plaintiff Cargill's motion (Filing No. 238) is denied without prejudice regarding all testimony except for the Frigorifico testimony.

2) The Court defers consideration of the Frigorifico opinion until trial.

3) Plaintiff Cargill's motion (Filing No. 244) in denied without prejudice.

4) The Court defers consideration of the relevance and prejudice of the irradiation opinions for trial.

5) Plaintiff Cargill's motion (Filing No. 256) is denied.

6) Dr. Benson's expert opinion regarding GOPAC's counterclaim is moot.

7) Plaintiff Cargill's motion (Filing No. 268) is denied.

DATED this 20th day of May, 2014.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court